KAIGLER *v.* ROBERTS, ordinary, *et al.*

1. A local act for the registration of voters in a given county which declares it unlawful to vote at any election without having first registered, and then proceeds to require registration biennially in those years in which elections are held for Governor, members of the General Assembly, members of Congress and presidential electors, applies only to voting at elections for the officers designated in the act, leaving the general law to operate upon all other elections, including an election held under §508(i) *et seq.* of the code, to determine whether a county debt shall be created by issuing bonds for a public object, such as the erection of a new court house for the county.

2. The election in question being one for which no preliminary registration is required either by the local act or the general law, the provisions of §508(l) of the code apply, prescribing that whether or not two thirds of the qualified voters of the county have voted in favor of the measure proposed, the tally sheets of the last general election shall be taken as a correct enumeration of the qualified voters. This is true notwithstanding the last general election may have been one for which registration was necessary, and notwithstanding the registered voters for that election may have been much more numerous than those who voted at the same according to the tally-sheets.

3. Under the allegations of the petition, the proposed issue of county bonds by the county authorities of Terrell county is not violative of the constitution or laws of this State, and no good cause appears for enjoining the same. The presiding judge did not err in denying the injunction.                    *Judgment affirmed.*

June 20, 1892.

Statutes. Elections. Registration. Constitutional law. Before Judge GUERRY. Terrell county. At chambers, May 23, 1892.

An injunction was sought by Kaigler, a citizen and tax-payer, to prevent the county authorities of Terrell county from issuing and selling bonds to the amount of $36,000 for the purpose of building a new court-house for the county, under an election held on January 13, 1892. The petition was brought on May 21st. The injunction was denied, and the plaintiff excepted. It appears that at the election, which was ordered under

the code, §508(i) *et seq.*, three hundred and fifty votes were polled, of which three hundred and six were for bonds and forty-four against bonds. The registration books of the county, made under the act of 1887 (Acts 1887, page 737), showed 1,800 persons registered as qualified voters, the last registration being in 1890. Since that time there have been three general elections in the county, to wit, for Congressman, Governor and county officers, and the vote polled at the election for bonds was more than two thirds of the vote cast at any one of the three preceding general elections, the votes at the last of these three numbering 244. The petition alleges that registration was a test of the qualification of voters, and that under the constitution the county has no right to issue bonds for the purpose in view. The answer alleges that over 800 of the persons whose names appear on the registration books as qualified voters, are on the insolvent list in the county, and therefore are not qualified voters within the meaning of the constitution ; that the registration law requires the registration of voters only for the year 1888, and biennially thereafter, or during each year as elections are held for Governor, members of the General Assembly, member of Congress and presidential electors, and therefore the legislature intended it to apply only to the elections specified ; that this law is only one of the tests of a qualified voter, and registration is not *prima facie* evidence of the voter's qualification, for the reason that the law enacts that any person offering to vote at any election in the county shall be subject to challenge under the same rules and regulations as now govern, notwithstanding the provisions of this act; that this is a local law, and if the books of registration are to be taken as the criterion of qualified voters in the county, the law would conflict with the general law and would be unconstitutional; that it makes no provision for

voters moving into the county between the times prescribed for registration, thus disfranchising a large number of voters, and for that reason it is unconstitutional; that it requires separate lists of registration for white and colored voters to be kept and sent to the election managers, thus making a discrimination contrary to the constitutions of Georgia and the United States; that in the bonds to be issued is a provision that the county binds itself to collect during each year, in excess of the interest on these bonds, $1,200 to be deposited in some solvent bank and used for no other purpose than as a fund to pay off these bonds as they mature, for which reason it is submitted that these bonds would be good and valid without any election, said sum being less than one fifth of one per cent. of the taxable property of the county. Finally it is shown that the county authorities under this election have issued the bonds, made a contract for their sale, and contracted for the building of the courthouse; that the contractor and the commissioners have gone forward in good faith, and about $15,000 have already been expended by the contractor on the building, which is now ten or fifteen feet above the ground in process of erection, a large amount of material being on hand therefor; for all of which reasons the good faith of the county is pledged, and equity demands that the bonds be sold and the proceeds applied as the law directs.

HOYL & PARKS, by brief, for plaintiff.

J. M. GRIGGS, by J. H. LUMPKIN, for defendant.

---

## HARKEY *v.* THE STATE.

1. Even if a person indicted for furnishing intoxicating liquors to a minor without written consent of the parent or guardian can defend the charge by showing that he had exercised due diligence to ascertain whether the alleged minor was of full age or not, and